**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| DARLENE JAMERISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:20-cv-1640-MTS |
| ) | |
| ANTHEM INSURANCE ) | |
| COMPANIES, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Before the Court is Defendant Anthem Insurance Companies, Inc.'s Motion for Summary Judgment, Doc. [38], pursuant to Federal Rule of Civil Procedure 56, on Plaintiff's three-count Complaint, Doc. [3], asserting claims under the Missouri Human Rights Act ("MHRA"). For the reasons set forth below, the Court grants Defendant's Motion.

**I.   BACKGROUND**

Plaintiff Darlene Jamerison is a fifty-seven-year-old, African American woman who has worked for Defendant for thirty-six years. This case arises from allegations that Plaintiff's supervisor, Mary Derhake, unlawfully harassed, retaliated, and discriminated against Plaintiff based on her race, age, and disability.

Since 1985, Plaintiff has held several positions with Defendant, including Membership Specialist, Claim Processor, Analyst, and Underwriter Assistant. Since 2012, Plaintiff has held the position of Underwriter Assistant. In April 2018, Plaintiff asked Derhake, the Director of Small Group Underwriting, to be promoted to a Small Group Underwriter II position to fill a vacant position. Doc. [40] ¶ 76. Derhake told Plaintiff she could not promote her to the Small Group

1

Underwriter II position because it was not an in-line promotion, and that Plaintiff would have to apply for the position through "the proper channels like everybody else." *Id.* ¶ 77. In May 2018, Derhake became Plaintiff's direct supervisor. From May 2018 to April 2019, Plaintiff reported to Derhake, and during this time, Plaintiff testifies Derhake discriminated and retaliated against her and created a hostile work environment.[1] In April 2019, after a departmental reorganization, Plaintiff and Margie Droege—the Assistant Underwriter Team Lead—both lateraled to a different department and began reporting to Jennifer Flood.

Also in April 2019, Jim Clauss, the Vice President of Underwriting at Anthem in St. Louis, determined he needed to hire a Large Group Underwriter II. On April 16, 2019, the position was formally posted. The position required four minimum qualifications, one being that the candidate had "intermediary" or "guru" level proficiency in Microsoft Excel ("Excel"). *Id.* ¶ 47. All applicants were given the opportunity to self-select their proficiency level. Plaintiff applied for the Large Group Underwriter II position on May 10, 2019 and selected the "novice" option to classify her Excel proficiency. Of the fifteen total applicants for the Large Group Underwriter II position, seven met the minimum qualifications. Clauss hired Maggie Conkle, a forty-one year old Caucasian woman who met all four basic requirements and was currently employed at Defendant.

On May 28, 2019, a position for Small Group Underwriter II was formally posted on internal and external websites for three weeks. *Id.* ¶ 93. Plaintiff testified she was aware of the posting, thought about applying, and discussed applying for the position with several other employees. *Id.* ¶ 95. Plaintiff did not apply for the Small Group Underwriter II position. On June

---

[1] Plaintiff complains Derhake acted in the following unlawful ways: failed to publicly praise her, ignored her in the hallway, changed her work hours, chastised her for taking extended breaks, criticized her work in two team meetings, excessively observed her and her work, excluded her from meetings, did not allow her to choose assignments, rejected her request to take PTO, and rejected her request for a standing desk for months.

2

12, 2019, Derhake interviewed Katherine Kozemcak, a forty year old Caucasian woman who met all the minimum qualifications and was currently employed at Defendant. Plaintiff did not discuss the position with Derhake, even after Plaintiff learned Derhake had interviewed Kozemcak. Doc. [40-5] at 11 (41:1–22; 43:21–25.). On June 18, 2019, Derhake hired Kozemcak.

On November 1, 2019, Plaintiff filed a Change of Discrimination with the Missouri Commission on Human Rights (MCHR) and the Equal Employment Opportunity Commission (EEOC). Doc. [40] ¶ 172. Later, Plaintiff filed a three-count complaint under the MHRA for unlawful employment discrimination (Count I), hostile work environment (Count II), and retaliation (Count III). Doc. [3]. According to Plaintiff, all her allegations pertain to her manager, Mary Derhake, and Plaintiff's applications to the Large and Small Group Underwriter II positions. Doc. [40] ¶ 174. In the current Motion, Defendant moves for summary judgment on all three-counts. Doc. [38].

## II.    LEGAL STANDARD

A claim of unlawful discrimination may be established through direct or indirect evidence. Because Plaintiff's claim is not based on any direct evidence of discrimination, the Court will apply the *McDonnell Douglas* burden-shifting analysis. Mo. Rev. Stat. § 213.101.3 (stating "the court shall consider the burden-shifting analysis of *McDonnell Douglas* . . . to be highly persuasive for analysis in cases not involving direct evidence of discrimination."); *Eivins v. Mo. Dep't of Corr.*, 636 S.W.3d 155, 166 (Mo. Ct. App. 2021) ("Like federal courts, Missouri courts use the burden-shifting analysis developed in *McDonnell Douglas* . . . to evaluate proof in discrimination cases where disparate treatment is alleged."). When deciding a case under the MHRA, courts are guided by Missouri law and federal employment discrimination case law consistent with Missouri law. *Lampley v. Mo. Comm'n on Hum. Rts.*, 570 S.W.3d 16, 22 (Mo. banc 2019) ("When

reviewing cases under the [MHRA, courts] are guided by both Missouri law and any federal employment discrimination (i.e., Title VII) case law that is consistent with Missouri law.").

Under the *McDonnell Douglas* burden-shifting framework, Plaintiff must first demonstrate a *prima facie* case of discrimination; then the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the challenged action; finally, if Defendant offers such a reason, the burden shifts back to Plaintiff to show the proffered reason is merely a pretext for discrimination. *Eivins*, 636 S.W.3d at 166–67. If Plaintiff fails to make a *prima facie* case, the Court grants summary judgment. *See, e.g.*, *M.W. by & though K.W. v. Six Flags St. Louis, LLC*, 605 S.W.3d 400, 419 (Mo. Ct. App. 2020) (affirming summary judgment in favor of employer when plaintiff failed to present sufficient evidence from which a factfinder could find necessary elements of her *prima facie* discrimination claim) (Ransom, J.); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (explaining if Plaintiff fails to make a sufficient showing on an essential element of her case with respect to which he or she has the burden of proof, the moving party is "entitled to a judgment as a matter of law").

The Court views any factual disputes in the light most favorable to Plaintiff, *Scott v. Harris*, 550 U.S. 372, 380 (2007), and will grant summary judgment only if evidence could not support any reasonable inference for Plaintiff. *Hilde v. Cty. of Eveleth*, 777 F.3d 998, 1004 (8th Cir. 2015) ("if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext."); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). Despite this deferential standard, Plaintiff will not

4

withstand summary judgment with "[m]ere allegations, unsupported by specific facts or evidence beyond [her] own conclusions." *Thomas v. Corwin*, 483 F.3d 516, 526 (8th Cir. 2007); *Bram v. AT&T Mobility Servs., LLC*, 564 S.W.3d 787, 799 (Mo. Ct. App. 2018) (explaining an "inference" of discrimination is not raised by a "plaintiff's general, conclusory allegations and opinions" (quoting *Palesch v. Mo. Comm'n on Human Rights*, 233 F.3d 560, 570 (8th Cir. 2000)).

For reasons discussed below, the Court finds Plaintiff's claims for discrimination, failure to promote, retaliation, and hostile work environment failed at the *prima facie* stage and that, even if she had met the elements of her *prima facie* case, she would be unable to establish pretext on this record.

### III.   DISCUSSION

Before the Court begins its analysis, some housekeeping is in order.  The MHRA prohibits an employer from discriminating against an employee on the basis of race, sex, age, or disability. *See* Mo. Rev. Stat. § 213.055.1(1)(a).  Here, Plaintiff alleged she was discriminated against based on her race, disability, and age.  In the current Motion, Defendant argued Plaintiff was not disabled under the MHRA, and Plaintiff failed to address this argument in her Opposition Brief.  Thus, Plaintiff concedes Defendant's argument that she was not disabled under the MHRA.[2]  *See, e.g.*, *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) (The "failure to oppose a basis for summary judgment constitutes waiver of that argument").  Similarly, Plaintiff did not address Defendant's argument that Plaintiff was not discriminated against based on her age.[3]  Thus, the Court only considers discrimination under the MHRA based on Plaintiff's race.

---

[2] The Court also finds Defendant's argument has merit that Plaintiff is not disabled under the MHRA.  *See* Mo. Rev. Stat. § 213.010(5) (defining "disability").

[3] The Court also finds Defendant's argument has merit. *See* Mo. Rev. Stat. § 213.010 (defining "age" as forty or more years old); *Riley v. Lance, Inc.*, 518 F.3d 996, 1000 (8th Cir. 2008) (explaining *prima facia* is met when a similarly situated but "substantially younger" individual was treated differently than Plaintiff) (analyzing MHRA claim).

5

### A. <u>Failure-to-Promote</u>[4]

Plaintiff claims she was not promoted to two positions—Large Group Underwriter II and Small Group Underwriter II—based on her race. If true, the MHRA prohibits such conduct. *See* Mo. Rev. Stat. § 213.055.1(1)(a). To establish a *prima facie* claim for discriminatory failure-to-promote under Missouri law, Plaintiff must show, among other elements, that she *applied* for and *qualified* for the position. *Eivins*, 636 S.W.3d at 165. Here, Plaintiff was not qualified for one of the positions, and she did not even apply for the other. Because Plaintiff failed to present sufficient evidence to support an essential element of her failure-to-promote claim, summary judgment for Defendant is appropriate for lack of a *prima facie* case.

#### 1. *Large Group Underwriter II*

With respect to the position for Large Group Underwriter II, Plaintiff cannot establish a *prima facie* case of discrimination based on failure-to-promote because she did not meet minimum qualifications for the position—per her *own* self reporting—and Plaintiff does not dispute she was unqualified for this position.[5] Instead, Plaintiff ignores her burden to show this necessary element and argues disparate treatment—but this argument fairs no better. *Eivins*, 636 S.W.3d at 166 (applying *McDonnell Douglas* burden-shifting analysis to evaluate failure-to-promote cases based on disparate treatment). Even under a disparate treatment theory, Plaintiff cannot overcome summary judgment because an undisputed minimum requirement for the Large Group Underwriter II position was "intermediary" level proficiency in Excel, and Plaintiff did *not* meet that requirement. *See, e.g.*, *Eggers v. Wells Fargo Bank, N.A.*, 899 F.3d 629, 634–35 (8th Cir. 2018) (explaining employer policies regarding applicant qualifications may preclude a plaintiff from

---

[4] Failure to promote claims under Title VII and MHRA are governed by the same analysis and standards. *Young v. Time Warner Cable Cap., L.P.*, 443 F. Supp. 2d 1109, 1125 (W.D. Mo. 2006).

[5] Rather, Plaintiff argues that it would not have mattered if she had met the qualifications because she would not have been interviewed anyways because minority candidates were not seriously considered. Doc. [41] at 10.

establishing a *prima facie* case of disparate treatment against employer); *Brackson v. Dolgencorp*, 4:05-cv-0801-FJG, 2006 WL 8438277, at *8 (W.D. Mo. 2006) (granting summary judgment in favor of employer where plaintiff-employee failed to prove a *prima facie* case of racially discriminatory failure to promote under the MHRA because he was not qualified for position).

Moreover, where, as here, Plaintiff attempts to prove her case based upon disparate treatment, Plaintiff bears the burden of establishing that she and the employee of the unprotected class are "similarly situated in all relevant respects."[6] *McGhee v. Schreiber Foods, Inc.*, 502 S.W.3d 658, 667 (Mo. Ct. App. 2016); *see also Cox v. Kan. Cty. Chiefs Football Club, Inc.*, 473 S.W.3d 107, 119–120 (Mo. banc 2015) (explaining a disparate treatment plaintiff must show she was "treated differently from similarly situated members of the unprotected class"). Plaintiff provides no evidence that a Caucasian applicant who similarly did not meet the minimum requirements was interviewed or hired. Nor did Plaintiff provide evidence that Conkle, the applicant who was interviewed and hired, failed to meet the minimum requirements, specifically the Excel proficiency level, *like Plaintiff*. *See, e.g.*, *Ross v. Kan. Cty. Power & Light Co.*, 293 F.3d 1041, 1047 (8th Cir. 2002) (affirming summary judgment where applicant hired had superior skills to plaintiff); *Eivins*, 636 S.W.3d at 168 (explaining a submissible case of discriminatory failure to promote can be shown if chosen candidate was not as qualified for the position). Thus, Plaintiff cannot show she was treated differently than similarly situated employees of a different race. And Plaintiff's attempt to compare herself to Conkle or any other employee not part of the protected class fails to create a factual issue sufficient to overcome summary judgment. *See Kerr v. Curators*

---

[6] Nor can Plaintiff rely on Derhake's conduct to prove an inference of discrimination here. Plaintiff does not present any direct or indirect evidence of discrimination because "no reasonable inference links" Derhake to Clauss's hiring. *Denn v. CSL Plasma, Inc.*, 816 F.3d 1027, 1035 (8th Cir. 2016) (analyzing MHRA claim and explaining the discriminating employee must be linked to the decision-maker); *see also Fast v. Southern Union Co., Inc.,* 149 F.3d 885 (8th Cir. 1998) (finding that comments by non-decision maker provided circumstantial evidence of discrimination where other evidence indicated that the comments influenced the decision to fire the plaintiff).

7

*of the Univ. of Mo.*, 512 S.W.3d 798, 807 (Mo. Ct. App. 2016) (affirming summary judgment in favor of employer on MHRA discrimination claim where plaintiff "did not identify co-workers who were outside the protected class but who were otherwise similarly situated to [plaintiff] and treated more favorably" and also "the employees [plaintiff] compared herself to were not similarly situated"); *Flynn v. AT & T Yellow Pages*, 780 F. Supp. 2d 886, 896 (E.D. Mo. 2011) (granting summary judgment where plaintiff failed to provide evidence that any similarly situated, younger, or Caucasian employee was treated differently).

In sum, Plaintiff was disqualified from the Large Group Underwriter II position such that she did not meet her *prima facie* burden, and even if she had, she cannot demonstrate pretext.[7]

### 2. *Small Group Underwriter II Position*

As to the position for Small Group Underwriter II, Plaintiff's claim fails because she did not apply for the job. *Cunningham v. Kan. Cty. Star Co.*, 995 F. Supp. 1010, 1022 (W.D. Mo. 1998) (holding plaintiff's failure to apply for job prevented him from a making a *prima facie* discrimination case under the MRHA where he had knowledge of the job posting but failed to apply); *McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1135 (8th Cir. 2006) (finding plaintiff failed to establish a *prima facie* failure-to-promote claim where plaintiff did not apply to a conspicuous job posting); *Scott v. Cowley Distrib., Inc.*, 2:17-cv-4179-NKL, 2018 WL 3978996, at *8 (W.D. Mo. Aug. 20, 2018) ("plaintiff's failure to formally apply for a position precludes the ability to establish a prima facie case of failure to promote"). Plaintiff argues the exception to formal application is applicable here because she expressed interest in the position to Derhake in

---

[7] Even if Plaintiff did make a *prima facia* case—which she did not—Plaintiff's claim would still not survive summary judgment. The fact that Plaintiff was not qualified also serves as a legitimate, non-discriminatory reasons for the employment decision. Thus, Plaintiff can succeed only by showing that Defendant's proffered reasons are a pretext. Plaintiff's only argument—that even if she met the requirements she would not have been interviewed because she is a minority—does not withstand scrutiny. Because Plaintiff did not rebut the legitimate, non-discriminatory reasons for the employment decision, Defendant is entitled to summary judgment on Plaintiff's Large Group Underwriter II position theory.

April 2018. While it is true that the Court of Appeals for the Eighth Circuit has recognized an exception to the application requirement based on an expression of interest in the position to the employer, the exception is applied narrowly and inapplicable here. *See Chambers v. Wynne School Dist.*, 909 F.2d 1214, 1217 (8th Cir. 1990).

First, the job opening must *not* have been officially posted or advertised. *See Chambers*, 909 F.2d at 1217; *Green v. Cty. of St. Louis, Mo.*, 507 F.3d 662, 666–67 (8th Cir. 2007) (acknowledging the *Chambers* exception does not apply where the job was posted). Here, it is undisputed Defendant formally posted the position for Small Group Underwriter II on internal and external websites from May 28, 2019 to June 18, 2019. Most telling, Plaintiff testified she was *aware* of the posting, thought about applying, and even discussed applying for the position with several other employees. Thus, Plaintiff had three weeks to apply for the position, but never did. As such, Plaintiff cannot show the application requirement is waived here. *See, e.g.*, *Lockridge v. Bd. of Trustees of Univ. of Ark.*, 315 F.3d 1005, 1011 (8th Cir. 2003) (finding no waiver of application requirement where the job listing was "officially posted" and the plaintiff failed to apply); *Green*, 507 F.3d at 666–67; *Cunningham*, 995 F. Supp. at 1022.

Second, Plaintiff must have made "every reasonable attempt to convey h[er] interest in the job to the employer." *Chambers*, 909 F.2d at 1217; *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011). Plaintiff told Derhake she was interested in becoming an underwriter in April 2018—*more than a year before the job was posted*. In fact, Plaintiff admits she *never* discussed the specific position with Derhake. Doc. [40-5] at 11 (41:1-22). Thus, no jury could find Plaintiff made every reasonable attempt to convey her interest in the position from these facts. *Chambers*, 909 F.2d at 1217; *Green*, 507 F.3d at 667 (finding "too many gaps in th[e] record" not reasonably show employer knowingly bypassed plaintiff for a suitable job opening).

In sum, Plaintiff's failure-to-promote claim cannot overcome summary judgment because she cannot meet her *prima facie* burden for either Underwriter position.

## B. **Unlawful Employment Discrimination**[8]

Plaintiff argues that Derhake, her supervisor, took several alleged adverse employment actions against Plaintiff. To establish a *prima facie* claim for race discrimination under Missouri law, Plaintiff must show, *inter alia*, the alleged discriminatory act "must have had some adverse impact" on Plaintiff "before it becomes actionable." *Tuttle v. Dobbs Tire &Auto Centers, Inc.*, 590 S.W.3d 307, 310 (Mo. banc 2019) (quoting *Kader v. Bd. of Regents of Harris-Stowe State University*, 565 S.W.3d 182, 189 (Mo. banc 2019)). To satisfy this requirement, Plaintiff must demonstrate "a significant change in employment status." *Williams v. True Mfg.*, 14-cv-1609-HEA, 2015 WL 4546618, at *3 (E.D. Mo. July 28, 2015) (analyzing MHRA claim). A significant change in employment is shown when "compensation, terms, conditions, or privileges of employment were negatively affected." *Bram*, 564 S.W.3d at 796; *see also Shore v. Children's Mercy Hosp.*, 477 S.W.3d 727, 732 (Mo. Ct. App. 2015) (affirming summary judgment for employer where plaintiff did not show any term or condition of employment he was denied).

Plaintiff cannot show a single adverse action that caused a material change in her employment status. Plaintiff did not experience any cut in pay or benefits, she was not subjected

---

[8] Claims of race discrimination under Title VII and the MHRA are all determined using the same analysis. *Evans v. Siegel-Robert, Inc.*, 139 F. Supp. 2d 1120, 1124 (E.D. Mo.), *aff'd*, 22 F. App'x 688 (8th Cir. 2001); *see also Moisant v. Air Midwest, Inc.*, 291 F.3d 1028, 1031 (8th Cir. 2002) (explaining "adverse action" standard under Title VII and the MHRA require the "same kind of showing").

to a change in job responsibilities,[9] nor were any future career prospects[10] or pay negatively affected. To the contrary, Plaintiff received positive performance reviews by all of her managers, including Derhake, and subsequently awarded a merit raise in 2018, 2019, and 2020. Although Plaintiff experienced a "minor change" to her work schedule, such change is not actionable here. *Jones v. Fitzgerald*, 285 F.3d 705, 713 (8th Cir. 2002) (finding "minor changes" in working conditions with no reduction in pay or benefits do not constitute adverse employment actions). Especially because *both*[11] Plaintiff and Droege—the Lead Underwriting Assistant—were requested to adjust their work schedules to stay at work thirty minutes later, Doc. [40-5] at 26 (102:14–103:14), and, when Plaintiff,[12] like Droege, did not comply with that request, Plaintiff was not disciplined, Doc. [40] ¶ 155. In fact, Plaintiff admits that in the three-plus decades working for Defendant she was *never* disciplined, issued corrective action, or coached. *Id.* ¶ 142. Rather, Plaintiff generally reports disrespect, ostracism, and hostility by her supervisor which *alone* does

---

[9] Plaintiff admits her transfer from the Underwriting team to the Enrollment & Billing team was not a demotion, but rather a lateral move. Doc. [40] ¶ 20. Nonetheless, the Court notes that "[e]ven if an employee is forced to change positions, resulting in an 'alteration of job responsibilities,' the employee must still show a significant change in employment status." *Williams v. True Mfg.*, 14-cv-1609-HEA, 2015 WL 4546618, at *3 (E.D. Mo. July 28, 2015) (analyzing MHRA claim); *see also Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013) ("minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action"); *see, e.g.*, *Spears v. Missouri Dep't of Corr. & Hum. Res.*, 210 F.3d 850, 854 (8th Cir. 2000) (finding plaintiff's transfer to a new location merely an inconvenience and not actionable under Title VII because no evidence that her transfer had any impact on her job title, salary, benefits, or any other material aspect of her employment). Further, although Plaintiff complains Derhake did not allow her to choose assignments and projects, Plaintiff testified she was never excluded from any projects that she wanted. Doc. [40-5] at 32 (125:1–17).

[10] Although failing to promote is an "adverse action," the Court has already concluded that Plaintiff was not qualified for the Large Group Underwriter II promotion; thus, her argument that such rejection was an "adverse action" fails.

[11] While disparate treatment of members of a particular protected class could show discrimination, Plaintiff did not point to any term or condition of employment that she was denied that other non-African American employees received. *Shore v. Children's Mercy Hosp.*, 477 S.W.3d 727, 732 (Mo. Ct. App. 2015)

[12] The Court notes Plaintiff did comply with the directive for three months.

not rise to the level of adverse employment action.[13]  *See Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 969 (8th Cir. 1999) (explaining "ostracism and disrespect" by supervisor not rise to the level of adverse employment action); *Chivers v. Wal-Mart Stores, Inc.*, 641 F.3d 927, 932 (8th Cir. 2011) (finding no adverse employment action when manager allegedly treated African-American female employee with disrespect, refused to acknowledge her in common greetings, and demeaned her); *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 634 (8th Cir. 2016) (finding random looks and eye rolls not constitute adverse employment action); *Jones*, 285 F.3d at 714 ("personal animus, hostility, disrespect, and ostracism" do not rise to the level of adverse employment action).

Thus, Plaintiff failed to make a *prima facie* case of race discrimination because the record does not establish any sufficiently adverse action taken against her—i.e.: a significant change in employment status.  *Ressler v. Clay Cty.*, 375 S.W.3d 132, 141 (Mo. Ct. App. 2012) (explaining a *prima facie* case for summary judgment can be established by showing undisputed facts negate *any one* of the plaintiff's required proof elements).

C. **Retaliation**[14]

Plaintiff argues she was treated poorly by Derhake and subsequently rejected from a promoted based on retaliation.  To establish a *prima facie* claim for discriminatory retaliation under Missouri law, Plaintiff must show (1) she engaged in MHRA-protected activity,[15] (2) she suffered an adverse employment action, and (3) the adverse action was causally linked to the protected conduct.  *Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1023 (8th Cir. 2019) (analyzing MHRA).

---

[13] Even formal criticisms or reprimands—which is not alleged here—that do not lead to a change in compensation, responsibilities, or other benefits do not constitute an adverse employment action.

[14] Retaliation claims under Title VII and the MHRA are governed by the same analysis and standards. *McCrainey v. Kansas Cty. Mo. Sch. Dist.*, 337 S.W.3d 746, 753 n.3 (Mo. Ct. App. 2011).

[15] "To retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter." Mo. Rev. Stat. 213.070.1.(2).

Although the Court already concluded Plaintiff did not suffer any adverse employment action,[16] Plaintiff's retaliation claim fails for other reasons too.

Plaintiff engaged in a protected activity when she filed a Charge of Discrimination ("Charge").[17]  *See McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1137 (8th Cir. 2006); Mo. Rev. Stat. § 213.070.1(2).  Yet, the alleged adverse action by Derhake and the job rejection occurred months *before* November 1, 2019—the date Plaintiff filed the Charge.  There can be no causal connection if the adverse action occurs *before* Plaintiff's protected activity.  *See Chivers*, 641 F.3d at 933; *see also Bram*, 564 S.W.3d at 799 (requiring plaintiff to prove defendant "purposely committed the act of reprisal because of" plaintiff's complaint); *Walsh v. Cty. of Kan.*, 481 S.W.3d 97, 106 (Mo. Ct. App. 2016) (explaining retaliate literally means to "inflict in return").  Nor was there "temporal proximity" between these actions and Plaintiff's Charge.  *Chivers*, 641 F.3d at 933; *McGaughy v. Laclede Gas Co.*, 604 S.W.3d 730, 753 (Mo. Ct. App. 2020) ("a close temporal relationship between a protected activity and the retaliatory act is" may show causation).  Thus, because the protected activity in this case occurred months *after* the alleged adverse action, there is no causal connection.[18]  *See Fischer v. Minneapolis Pub. Sch.*, 792 F.3d 985, 990 (8th Cir. 2015) (finding plaintiff could not establish a causal connection for retaliation because he only complained of discrimination *after* learning he would not be reinstated, the alleged retaliatory conduct); *Medley v. Valentine Radford Commc'ns, Inc.*, 173 S.W.3d 315, 325 (Mo. Ct. App. 2005)

---

[16] Although failing to promote is an "adverse action," the Court has already concluded that Plaintiff was not qualified for the Large Group Underwriter II promotion; thus, her argument that such rejection was an "adverse action" fails. Further, Derhake—the alleged retaliator—had nothing to do with hiring for the Large Group Underwriter II promotion as the Court discussed *supra* note 6.

[17] Plaintiff explicitly testified she did *not* report any form of discrimination or retaliation before filing her Charge on November 1, 2019.  Doc. [40-5] 36–37 (143:1–4; 147:9–14).

[18] As an example, Plaintiff filed the Charge six months *after* she was rejected from the Large Group Underwriter II position. In other words, Plaintiff only filed the Charge after learning she did not get the job, which "cannot be retaliatory." *Fischer v. Minneapolis Pub. Sch.*, 792 F.3d 985, 990 (8th Cir. 2015).

(affirming summary judgment in favor of employer when plaintiff provided no sufficient evidence to support a finding that the failure to rehire her was related to her discrimination complaint).  And because Plaintiff cannot identify any adverse action that occurred *after* she filed her Charge—in fact, she denies any retaliatory or discriminatory conduct during this time[19]—Plaintiff fails to establish a *prima facie* case of retaliation under the MHRA.  *Walsh*, 481 S.W.3d at 105–06 (requiring plaintiff to show a causal relationship between her protected activity and the adverse action).

To overcome this deficiency, Plaintiff argues that her general complaints about Derhake to various co-workers and her request for a standing desk are protected activities under the MHRA.  Yet, Plaintiff points the Court to *no* case law showing that these two events amount to "protected activity" as a matter of law.  *Heuton*, 930 F.3d at 1023 (declining to consider retaliation claim when plaintiff provides "neither meaningful argument nor Missouri precedent supporting any variation of his retaliation claim").  To the contrary, case law refutes Plaintiff's arguments.

First, even if the Court construed Plaintiff's request for a standing desk as a "reasonable accommodation," the Supreme Court of Missouri has made clear that a request for a reasonable accommodation is *not* protected activity under the MHRA such that it could give rise to a viable retaliation claim.  *See Li Lin v. Ellis*, 594 S.W.3d 238, 244 (Mo. banc 2020) (explaining that requesting an accommodation is insufficient to support a claim of retaliation under the plain language of the MHRA because such a request, standing alone, does not constitute opposition to a practice prohibited by the MHRA, nor does it constitute the filing of a complaint, testifying, assisting, or participating in any investigation, proceeding or hearing conducted under the MHRA).

---

[19] Plaintiff testifies she did not experience any discrimination, harassment, or retaliation when Flood became her supervisor in the spring of 2019, Doc. [40-5] at 25 (100:1–5), and that her Complaint pertains to Derhake and the applications to the Large and Small Group Underwriter II positions only.  Doc. [40] ¶ 174.

14

Second, Plaintiff's general discussions with her coworkers about Derhake do not, as a matter of law, amount to protected activity under the MHRA.  *See* Mo. Rev. Stat. § 213.070.1(2) (listing protected activities for retaliatory purposes); *Shore*, 477 S.W.3d at 735 (affirming grant of summary judgment to employer on plaintiff's claim of retaliation where plaintiff could not have reasonably believed he made a complaint of discrimination because he never complained to human resources, to his supervisor, or to the chair of his department that he was discriminated against because of his race); *see also Richardson v. Tri-State Iron & Metal Co.*, 4:19-cv-4095, 2021 WL 1818493, at *6 (W.D. Ark. May 6, 2021) (sharing "frustrations" with coworkers did not amount to protected activity because no evidence indicated the plaintiff or his co-workers reasonably believed they were opposing illegal employment practices by their employer).

D. **Hostile Work Environment**[20]

To establish a *prima facie* case for hostile work environment under Missouri law, Plaintiff must show that (1) she is a member of a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based on a protected characteristic, and (4) the harassment affected a term, condition, or privilege of employment.  *McGaughy*, 604 S.W.3d at 748.

Plaintiff has not pointed to any direct or indirect evidence showing the alleged hostile environment was based on her race or any discriminatory animus.  Plaintiff admits she was never subjected to any derogatory epithets, hate words, comments, slurs, posters, screen savers, cartoons, drawings, or gestures. *McGaughy*, 604 S.W.3d at 749 (finding multiple instances of racial hostility support claim for hostile work environment).  Rather, Plaintiff's complained of verbal harassment

---

[20] Hostile work environment claims under Title VII and the MHRA are governed by the same analysis and standards. *Young*, 443 F. Supp. 2d at 1124.

is that Derhake called Plaintiff a "whiner" and "complainer"[21] and that Derhake "unfairly criticized" Plaintiff in department meetings twice based on Plaintiff's own admitted work errors. Unlike these experiences, actionable harassment is "discriminatory intimidation, ridicule, and insult." *Fuchs v. Dep't of Revenue*, 447 S.W.3d 727, 733 (Mo. Ct. App. 2014) (quoting *Palesch*, 233 F.3d at 566).

Plaintiff attempts to create a question of fact by presenting evidence that, she claims, shows Derhake treated other Caucasian employees differently, which would show an inference of discrimination precluding summary judgment. *Cox*, 473 S.W.3d at 116 (explaining employment discrimination cases "often depend upon inferences rather than on direct evidence"); *Hembrador v. PruGen, LLC*, 4:19-cv-03203-SRC, 2021 WL 1105496, at *6 (E.D. Mo. Mar. 23, 2021) (finding evidence of similarly-situated employees can give rise to a factual issue regarding whether a discriminatory reason contributed to an employer's conduct). However, in several of these cited incidences Plaintiff admits she cannot identify any employee who for example, was allowed to take PTO even though they had not accrued it or received standing desks without submitting a doctor's note. Doc. [40] ¶¶ 159, 118; Doc. [40-5] at 14 (55:18–21). "Evidence, not contentions, avoids summary judgment." *Reasonover v. St. Louis Cty., Mo.*, 447 F.3d 569, 578 (8th Cir. 2006). And Plaintiff's "general allegations are not 'sufficient, specific evidence of disparate treatment to survive summary judgment.'" *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012) (quoting *Anderson,* 606 F.3d at 524).

Rather, Plaintiff's cited incidences deal with Derhake's specific treatment of Plaintiff individually and not treatment to other members of the protected class. *Gill v. Cty. of St. Peters*, -

---

[21] Notably, Plaintiff states Derhake never called her a whiner or complainer to her face; rather, Plaintiff heard this from co-workers. Doc. [40-5] at 46-47 (185:1–17). Plaintiff cannot rely on hearsay statements to defeat summary judgment. *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923–24 (8th Cir. 2004).

-- S.W.3d ----, 2022 WL 598985, at *7 (Mo. Ct. App. Mar. 1, 2022) (finding action that impacted plaintiff individually rather than African-Americans as a protected class insufficient to show disparate treatment). Indeed, Plaintiff offers only speculation that Derhake's actions were on account of her race. She does not cite to any record evidence or provide admissible or probative evidence[22] to support her assertions or substantiate her allegations. *Reed v. Cty. of St. Charles, Mo.*, 561 F.3d 788, 791–92 (8th Cir. 2009) (explaining plaintiff "may not merely point to unsupported self-serving allegations" but must "substantiate" her allegations with "sufficient probative evidence" that would permit a finding in her favor "without resort to speculation, conjecture or fantasy"); *Clay v. Credit Bureau Enters., Inc.*, 754 F.3d 535, 539 (8th Cir. 2014) (explaining the same is necessary to survive a motion for summary judgment). These bare assertions are insufficient to establish a genuine issue of fact. As such, Plaintiff is unable to provide sufficient probative evidence of disparate treatment, either directly or by inference, beyond her own speculation, that her alleged mistreatment was due to her protected status. *See Bram*, 564 S.W.3d at 799 (explaining an "inference" of discrimination is not raised by a "plaintiff's general, conclusory allegations and opinions"); *Kneibert v. Thomson Newspapers, Mich. Inc.*, 129 F.3d 444, 455 (8th Cir. 1997) (requiring party opposing summary judgment to provide sufficient probative evidence which would permit the court to rule in its favor rather than engaging in conjecture and speculation).

Even if the Court did that find a jury could view Derhake's treatment of Plaintiff as motivated by discriminatory animus, she has presented insufficient evidence of which a fact-finder

---

[22] *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . . ."); *see also Crews v. Monarch Fire Prot. Dist.*, 771 F.3d 1085, 1092 (8th Cir. 2014) ("At summary judgment, the requisite 'genuine dispute' must appear in admissible evidence."); *Bram*, 564 S.W.3d at 799 (explaining an "inference" of discrimination is not raised by a "plaintiff's general, conclusory allegations and opinions"); *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923–24 (8th Cir. 2004) (explaining the non-moving party cannot rely on hearsay statements to defeat summary judgment).

could reasonably find the treatment severe or pervasive—i.e.: that Derhake's actions affected a term, condition, or privilege of employment. *McGaughy*, 604 S.W.3d at 748 (explaining discriminatory harassment affects a term, condition, or privilege of employment if it is "sufficiently severe or pervasive enough to alter the conditions of the plaintiff's employment and create an abusive working environment"). In other words, the evidence does not show Derhake's treatment of Plaintiff was severe or physically threatening or humiliating, or that it unreasonably interfered with her work performance. *M.W.*, 605 S.W.3d at 412 (determining hostility of a workplace environment based on totality of the circumstances including frequency and severity of the harassing behavior, the extent to which it was physically threatening or humiliating, and whether it unreasonably interfered with plaintiff's work performance). Rather, "[a]ny looks or misconduct were minor, not physically threatening, and did not interfere with her work performance." *Kelleher*, 817 F.3d at 635 (affirming court's finding of no hostile work environment). While the alleged conduct cited by Plaintiff may have resulted in a frustrating work situation, Derhake's conduct is not so severe and pervasive such that a reasonable person would objectively find Plaintiff's workplace "poisoned or hostile." *M.W.*, 605 S.W.3d at 413; *see also Fuchs*, 447 S.W.3d at 734 ("Whether a reasonable person would objectively consider an employer's behavior towards a claimant severe enough to alter the conditions of her employment and create an abusive working environment is a question of fact." (internal marks omitted)). Even viewing Plaintiff's claims in light most favorable here, the Court does not find Derhake's conduct here, as a matter of law, amounts to actionable harassment.

Thus, Plaintiff fails to make a *prima facie* case of hostile work environment because she presented insufficient evidence from which a jury could find the alleged conduct rose to the level of severe and pervasive harassment or is linked to her protected characteristic. *Celotex*, 477 U.S.

at 322–23 (requiring a plaintiff "to make a showing sufficient to establish the existence of an element essential to his case" because "a complete failure of proof concerning an essential element of his case necessarily renders all other facts immaterial").

## CONCLUSION

Even when viewing the evidence and inferences in the light most favorable to Plaintiff, the Court finds no genuine issues of material fact exist regarding her claim for race discrimination, retaliation, and hostile work environment. On the undisputed facts, Plaintiff failed to meet her *prima facie* burden for all her claims under the MHRA.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, Doc. [38], is **GRANTED**.

Dated this 30th day of March, 2022.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE